Case number 225730, M. Katherine McKinney v. Starbucks Corporation. Argument not to exceed 15 minutes per side. Mr. Carter, you may proceed for the appellant. Good morning, Your Honors. My name is Arthur Carter. I'm here on behalf of Starbucks along with my co-counsel, John Harper, who is at council table. Quite simply, the district court abused its discretion in concluding that the 10-J injunction was just and proper and that immediate reinstatement of the seven employees was appropriate because there was to properly analyze the potential of NLRB remedial failure as a result. A brief comment about the discharge of the employees before addressing the insufficiency of the evidence of chill. Starbucks disagrees that it committed an unfair labor practice by discharging the seven employees at issue in this case. It discharged them because they violated a critical safety rule by opening a closed store without consent, inviting third parties into the store. Is your point that you conceded this? Is that what you're getting to? Because you conceded the cause part. We did not litigate cause to believe. I simply wanted to make clear that while we did not litigate cause, had a different standard been applied, we have litigated the merits and we just disagree with the board's conclusion and the district court's conclusion on the point. Am I right that the actual unfair labor practice charge is still pending in litigation? Your Honor, it's been fully briefed and submitted and the Minister of Law and Judge of the NLRB hasn't been decided. Okay, that was what I got from the record. I just wanted to make sure I didn't miss anything. You're correct. I think we finished the briefing in February. What I don't understand about what you just said is you're spending a lot of time talking about an issue you basically conceded for today's purpose. But the other point is I actually thought you had a decent argument. You've conceded it. But the Starbucks employees went into the store after hours when the store was closed. They let the media in the store. If my law clerks did that, I'd be pretty frustrated in my chambers. So I think there's a lot of merit to the point that there's reasons for discharge. But you've kind of conceded the point. Well, Your Honor, the reason for that is because of the two-part test in the Sixth Circuit and the suggestion made by the judge that the first prong of the test merely requires the board to have a theory that has some support and that the burden is very light. Pretty low bar. Yeah. And so our focus is on whether the injunction itself was just and proper. So what does just and proper do in this formulation? Is it just tailoring the scope of the relief? In other words, the relief just can't be beyond what's necessary to resolve the issue that's related to the theory of cause? Just and proper is much broader than that and is a much higher bar. Just and proper requires an assessment not only of whether there's underlying evidence that would support the propriety of relief, but also whether there is some indication that there would be remedial failure if an injunction were not to be granted. And what is the meaning of remedial failure? It's whether the alleged unfair labor practices could ultimately be addressed and cured by actions by the NLRB. And so the remedial failure means that whatever the NLRB did, you know, now it's still going on, would be insufficient or inadequate to cure whatever the problem would be? I think that's a good encapsulation of the idea, Your Honor. So and at bottom you would sort of mean, oh, okay, all right, if it turns out we lose in the middle of 2023, we just give them a bunch of money and make them whole, is that? And therefore, you didn't need to reinstate them or you could reinstate them later on? Well, the If you're in the employee's position, what would be the failure or the non-failure? Well, the question first becomes when it's a discharge, could normal board remedies, reinstatement and back pay fix the problem? And could a cease and desist order fix the problem? And that's the congressional scheme. The idea is 10J is an exception, it's not the norm. Okay, I get the sequence then. With respect to the sequence and the chill and the election, which we might get into, can you help me? As I understand it, these events happened in a January and February. The NLRB filed this petition in May. This election happens in June. Had the election already been scheduled and petitioned or when did that happen? The petition had been filed on or about the time of the events in the store. The election had not been held, though, until afterwards. Right. But that was what I was getting to in the sense that if the election was already scheduled or if they're close in time, doesn't that put more emphasis on the chill? That is, if the union went ahead and sought an election after the events of January, February, that might lead to more of an inference of, hey, we're not chilled, we're coming after you. The reality is the factual record shows an absence of chill. One is the election was successful, but that, I mean, let me go there then because that's the bottom line. It sort of sounds like you can do stuff to people and then if it fails to be successful, you say, oh, okay, sorry, no harm, no foul, we lost the election. Would it work the other way? If you won the election, would that be a strong evidence of chill? It would be fatal to your defense? Had the employees voted against the union, would that be evidence of chill? It would be evidence that whatever occurred may or may not have influenced employee free choice. I think a very salient point here, though, is the case was tried on the theory of erosion of support for the union and chill, and the reality is there's an absence of such evidence, and I would focus on... On erosion, were these people able to vote? Yes. Even though they'd been discharged? That is correct. And, Your Honor, it's worth noting what the evidence of erosion of chill is. It's essentially based on the testimony of one employee who worked a morning shift three  Hybrig? That's correct, Your Honor. And the district court unreasonably elevated Hybrig's testimony over that of several other objective evidence, and also failed to consider the inherent limitations of Hybrig's testimony. He testified that he was chilled and wanted to keep his head down because of the terminations, but he also testified that he was chilled because of a communication Starbucks had provided at Exhibit 14 to employees in the Memphis store that was never alleged to be unlawful. In fact, it was what's called a lawful 8C communication. Moreover, when he testified that he was fearful and wanted to keep his head down because of chill, he was asked the question, was your sentiment shared by other employees? And counsel for the general counsel objected to the testimony on the grounds it called for speculation, and the judge sustained the objection, yet relied on his testimony to more generally make the point that there was some evidence of erosion of support in the Memphis store. And then... What about the quantity? You know, if you fire one employee, that's one thing. You fire seven? I'm not sure how many employees worked there in total. About 25. Yeah, so... And on the, was the vote, the voting group was, I thought it was 14, was it 11 to 3? Yeah, that was the final result, Your Honor, because the seven voted subject to challenge, and so their ballots were not counted because they were challenged. So when you said they voted, they did vote, but they're not in the 11 to 3. That's correct. Okay, so that's how you get up into the 20s. Okay, thank you. But the thing to bear in mind about an NLRB vote, it's majority rule, and the vote is regarded as the gold standard. So it could have been just a one vote margin as long as it was majority of those voting. And so the union did prevail. Does that mean that you didn't have to adjudicate the challenge because they would have still won? It was not determinative of the outcome. Okay. All right. So extending on this point of the insufficiency of evidence of chill, is besides the district court having relied on just Heiberg's testimony, you had an organizer still in the store who approached 10 new employees, 9 of which signed cards, 2 of them asked for cards, those employees wore pins, took part in demonstrations with other employees at the store. And very important to appreciate the store situation. This is not an isolated work site like a factory on a hill very remote. During business hours, it's the functional equivalent of a public place. And the evidence was that the discharged employees hung out at the store, came to the store and visited their friends and others, held demonstrations at the store with employees pre-shift, post-shift, off-duty, and freely talked to everyone there. And so it's not as if the terminated employees were isolated from the existing workforce. The other thing that's notable about... Hey, they didn't have a job, right? They weren't getting paid. They weren't getting paid. They didn't have a job. The discharged employees? Yeah. I mean, they talked to their friends, but they were unemployed. Of course. No. But what they were doing, Your Honor, is they continued to engage by their own testimony in organizing activity at the store. Yeah. I mean, that's sort of a... You're sort of punishing them then. If they step back and don't do anything, they recover. But if they stay engaged, they get punished for that. Well, the problem that the district court found is erosion of support and a chilling of activity, and the continuing engagement shows the opposite of being chilled. They're continuing to engage in the activity. And what you further have is two of the organizers that were terminated expressly testified that the terminations helped them be successful in the organizing at the store. Should we not at all consider bargaining after the... So the employees vote to unionize, but then bargaining comes after that. And wasn't this like... Weren't the fired employees the vast majority of the bargaining committee? May I proceed? Yeah, of course. I assessed your question. Thank you, Your Honor. Of course. The terminated employees were members of the bargaining committee, and it's not necessary to be an employee to be a member of the bargaining committee. They had notified the company the bargaining committee had been formed and exchanged communications with the company about Sam. But if I may, otherwise I can cover it in rebuttal. No, I'm interested to... The issue in bargaining and the thing that Judge Lippman focused on is because the employees are not in the store, it will render bargaining ineffective. And she has the legal standard wrong. The NLRB does not require that bargaining be effective merely that bargaining take place. It's up to the parties to determine whether bargaining can be effective or not. And Your Honors, Judge Lippman cited a group of cases on this theory of bargaining be effective. And in each of those cases... By effective, do you mean it reaches a result? In other words, was it seven-eighths of the bargaining committee that was fired? Or... Six-sevenths. Six-sevenths. Okay. So a vast majority... We didn't go to law school for math, but it's... So it's just a vast majority of the bargaining committee is terminated. It's not wild to think that that might have some deleterious effect on the ability of the employees to bargain at that point. Either because the numbers are down or because they know sort of the arguable animus by the company. And is it your point that so long as any kind of bargaining takes place, that's enough? In other words, if it totally thwarts bargaining, that's one thing. But as long as any kind of bargaining happens, even if it's vastly not favorable to the employer, that's okay? I'm not saying that's what happened, but is that the standard? Well, I'm saying that the authority relied on by the judge is different than the facts in our case. Okay. So what's the answer to? So what do you think the right answer is? Is it so long as any bargaining takes place, that's enough? Your Honor, that suffices. The cases where the concern is raised about undermining bargaining, unions have been certified just like here, but bargaining had commenced, and at least in three of those cases, there were expressed 8A-5 allegations. That's the section of the Labor Act pertaining to bargaining. And the last point is... Is it temporal? More of a temporal? The temporal proximity was much closer in those cases, like bargaining was actually happening. Yeah, that's a good analogy, is there is temporal proximity. Those other cases involved bargaining and evidence over concerns about whether bargaining was appropriately taking place. The bargaining had started, the employer refused to meet, a de-cert had been filed, and then the employer declined to meet and threatened people with termination. Nothing like our record and nothing like our facts. There was no evidence induced that there was a problem with bargaining. Just to be clear then, so the certification of the union had happened, there was some type of bargaining that happened prior to the order of the district court here, am I right about that? Again, that's extra record, your honor, because we finished trying the case in June. The certification may have been in late June. What's happened since is the parties have proceeded and... So when the judge talked about bargaining effectiveness, it was referring to what would happen in the future. What might happen. All right. Yeah. I'll sit down, but I'll say one thing. Her injunction is akin to what I think Rule 65 prohibits, which is obey the law in the future. There is no evidentiary basis for granting relief related to bargaining. Thank you. Thank you, your honor. And by the way, I'm presuming if I eroded my rebuttal time. Thank you. Yeah. Good morning, and may it please the court. I'm Lori Duggan for the NLRB. This case, your honors, concerns Starbucks' extraordinarily brazen conduct in executing a mass discharge of seven employees. I mean, I thought it was pretty brazen to let the media into the store after hours. That's remarkable. Every employer would be outraged by that, I think. Your honor, in its brief and just now, the Starbucks conceded that they're not contesting on appeal the point of reasonable cause. And so since they have not properly raised that issue on appeal, we respectfully request that your honors not consider that issue. Well, wouldn't it have something to do with the just and proper? I mean, don't we have to look at the whole... Don't we have to look at the point of the cause and what the violation was and what's just and proper? The board need only establish reasonable cause... Yes, your honor. To the extent that you would like to consider that fact, I would point to the fact that that was concerted protected activity. So it was lawfully protected activity that occurred... Allow the media to store after hours? Your honors, it was a brief, about 10 minute period of time. I don't care about that. One 30 seconds seems like... It just seems like a black and white thing. Employees are not authorized to do. What about the sit-in? Does the store have to stay open? If the store knows that a sit-in is coming, does an NLRA or another federal law require the store to stay open to allow the sit-in to happen? It requires the store to not discriminate against protected concerted activity. So if in the past it has closed the store under similar circumstances, that would be lawful. But in this case, it has not in the past closed the store for the circumstances that it gave here, which were none. It closed the store because of the fact that it got wind of... Is there any other sit-ins at this Starbucks? Not to my knowledge, your honor. So it's sui generis. Your honor... I just can't... It's hard to believe... It's hard to... If people want to come in your store and disrupt the daily activities, whether it's a pro-life group or a pro-choice group or the employees, it seems pretty natural to say, look, we just prefer to close the store. This will be a big distraction. It might be harmful to the customers. Your honor, it's different to close the store for a third party coming in to disrupt the activities. Why? That's kind of the basis of my question. Why is it different? Because here it's the employees that are engaging in that activity. So when you say sit-in, actually the employees were still working. So there was no disruption of the normal business practices. They simply were expressing via pins that they were wearing on their shirts. Okay. I thought there was an actual sit-in where they were actually... That's why they closed. Because people were trying to come in the store, maybe other employees who weren't working, and they were going to sit in the lobby or sit in the... No, it was a period of time where they passed out cards. They had little note cards that said, you know, we're seeking to organize the store, and they would hand them to customers and say, you know, please support us. Please write a note of solidarity and post it on our community bulletin board. And so the fact of the matter is that Starbucks removed those notes from the bulletin board. Starbucks at every level, including closure, discharge, removal of those notes from the I'm trying to get the facts straight. You know, if they had said, you know, if they posted on the... Is your argument that if they posted on the bulletin board, you know, Go UK or University of Memphis, that they would have left them up, but because they were union, they took them down? Or that if they passed out cards saying Derby Festival or Mud Island Festival coming up, that would have been okay? Precisely, Your Honor. But when you are specifically removing union-related protected conduct, that is unlawful. That's discriminatory. It's union discrimination, and it's exactly what the National Labor Relations Act prohibits. There have been countless board cases... And I mean, you sort of said, yes, exactly. Was there evidence on that submitted at some point in the proceedings? Yes, Your Honor. And the district court properly found that there was reasonable cause to believe that that unfair labor practice violation had occurred. Your Honors, I want to direct your attention to a couple of questions. I have a question. Is it right that the employees could get back pay under the scheme, the NLRB scheme or the NLRA? Under the administrative procedures, yes. The employees are entitled to back pay after the issuance of a final board order. And they're also entitled to get their job back. Yes, they are entitled to reinstatement. That's correct. I want to direct your attention to the quantum of evidence required in this case. So Starbucks makes much of the fact that there was a witness who testified, Axe Heiberg. And actually, in this case, there are two points that relate to the quantum of evidence presented and the quantum of evidence required to satisfy the just and proper standard. What is just and proper in this circumstance? Is it the certification? Is it bargaining? Is it just the general atmosphere? What's trying to be remedied here? So the point of the just and proper standard is to make sure that the injunction preserves the board's remedial power. So because of the passage of time, the union support inevitably dies due to the passage of time. I didn't hear. It did, Your Honor. There was sufficient evidence that... The union wasn't even alive. It came to life. The opposite of dying. It sprung to life. No, Your Honor. The evidence before the violations is that there was almost 100% employee support at the Memphis store. They had collected 17 authorization cards indicating support for the union. And then as opposing counsel discussed, the election victory showed employee support. And one point on that matter... Well, I don't understand. So there was employee support before the terminations and there was employee support after the terminations? Employee support after the terminations was significantly chilled. And that was shown in the evidence of... Wow. In the testimony of Axe Heiberg, Reagan Hall... There was one guy who was working, who works part... I mean, a friend on their side said this, you know, he works part-time or he works in the mornings and he wouldn't quantify or he wouldn't opine as to what others thought. A lot of the employees always work in the mornings. They work 20-hour shifts. That was actually part of some of the employees' discontent with the practices at Starbucks. They wanted to have more hours and to have set hours and a guaranteed amount of hours. But in addition to Heiberg, Reagan Hall, who is the lone committee member remaining at the store after the discharges, she also testified as to extensive chill of employee support after the Memphis 7 were discharged. She testified... When, what, support for what? Because again, the union was certified. I mean, is your whole case about the union being certified by a greater vote? No. Had they not been employed? No, Your Honor. So, what's concretely... Concretely, employee support is critical for the union at this juncture. This is a first contract bargaining situation. So, after the employee was voted in, the next step... But the juncture at the time of the termination was not even bargaining. The juncture was whether there was going to be a vote or not and how that vote would turn out. And that happened, the vote happened, and it was successful. The vote happened... To the temporal proximity point I was making, it's like two or three steps down the road, you're saying. The chilling was... The chilling... I think your case about chilling is that it hurt the bargaining, which was, again, two or three steps down or might hurt the bargaining. It's one step down the road. So, the election occurred around the time of the... The results came out right before the district court hearing. So, shortly before the district court entered its injunction. And shortly thereafter, the only step next is to sit down to bargain. And that's exactly what happened. At the time of the injunction, the union had been certified. Recently certified, that week, correct. And bargaining had not... Judge Boggs sort of asked these questions, but bargaining had not started. It was going to start. It was... Right, that's the next... So, you can't start bargaining. And actually, I think Judge Boggs might have asked the question of whether bargaining had occurred before the injunction issued. And no, it did not. You can't require an employer to bargain until you have a union that's certified. I understand that. So, it seems pretty speculative. I mean, no bargaining had started. And the district... The injunction remedies CHIL with respect to bargaining, but there had been no... How have there been any showing that bargaining would be effective when bargaining basically had not even started? It seems sort of hypothetical. It's common... Well, in addition to the evidence of CHIL in the record, it's also common sense and courts have recognized the inherent chilling effect on the bargaining process. So, what happened... Aren't those usually when the violation happens closer to the bargaining? Like, while the bargaining is happening? Your Honor, this is about as close to the bargaining as it can get. The first bargaining session occurred at the beginning of November. Well, this was before the bargaining. And I thought these other cases involved violations basically during the bargaining process. There are other cases where violations have occurred during the bargaining process, but in this case, the reinstatement of these core of employees was necessary to protect the efficacy of the bargaining process. So, that means that... Based on what? Based on the one employee's testimony that he felt chilled? And what... I mean, common sense. We all have common sense. That's not a very uniform standard. So... What unions need, and courts have recognized this, is that unions need leverage in order to make gains at the bargaining table. So, what the injunction did is got the parties to the bargaining table, stabilized the situation, and restored the lawful status quo, meaning the legitimate and untainted level of employee support for the union. The union needs that support in order to bargain effectively. This seems so hypothetical. Employees have to ratify a contract. They have to agree to ratify the contract. They don't have to do all those things. There's just no... There's just no tie between what happened and any tangible change in relationship between the parties. It's all just sort of, well, if there's been more... If there's... Bargaining hasn't even started. So, how do we have any idea of whether having these seven would have changed... Would have impacted bargaining, which hadn't even happened? Why couldn't bargaining happen, and then if there's an issue, they could file a complaint and you could address it then? Well, so the... Again, the injunction is serving its purpose because it's reinstated these employees for the bargaining process, and that right... Purpose has to be tied to like a harm. Yes, it's reinstating them with respect to bargaining, but there has to be like some harm that it's remedying, and you're saying the harm is bargaining, but bargaining hasn't started. I keep asking the same question, so I'll stop, but that... I'm having trouble with that part of your case. Sure, Your Honor. The... In addition to the fact that... So, the harm is related to employees' willingness to stick their neck out for the union, basically. When you get fired or you see a bunch of people get fired at your workplace, for trying to unionize, you no longer want to stick your neck out for the union. You no longer want to support the union. You're scared, but that's exactly... That employee support, that sticking out of the neck, is exactly what the union needs in order to effectively bargain. Effectively bargain. In order to engage in a bargaining process at all, it has to get... It has to have informed bargaining positions. It has to know... Are there any... Are there any cases either within the... The NLRB or outside have this situation of arguing about reinstatement when bargaining hasn't commenced yet. That is, it's about to commence. I understand Judge Radler makes the point that it's quote speculative, but on the other hand, it's not implausible speculation. So, are there any cases that have addressed that? Yes, Your Honor. Look at... A close factual case is a Hearn v. Jackson Hospital Corporation 351 F3D 226. That's a 2003 case in the Sixth Circuit where three employees were discharged and this court determined that an injunction was necessary to restore the lawful status quo. It was also a first contract bargaining situation where, again, there was no established... If I read that case will I find that bargaining had not commenced at the time of the district court order there? Yes, Your Honor. That's what I mean by a first contract situation. Well, you can have a first contract but bargaining had already started. You're right. I can look at that. Thank you. It's a good citation. You're welcome. I'd also like to point out Your Honors that in many cases there may be conflicting evidence. For example, there may be evidence that there was harm that some employees were chilled. Their collective bargaining rights were chilled. Their employee rights to stand up and stick out for the union were chilled. And there may also be parallel evidence that other employees were not chilled. They still managed to stick up for the union. And there's case law to support the fact that in those circumstances where there's two baskets of evidence the district court has the discretion to choose a basket of evidence to weigh it and to decide that there was enough evidence of chill that's the quantum of evidence required in order to satisfy the just and proper standard. So in this case there was in addition to the inherent chilling of          had the discretion to weigh it and decide that there was enough evidence that there was enough evidence to wait at that   the  to decide that there was enough evidence to decide that there was enough evidence to decide that the judge should decide that they were not quite ready enough enough evidence  decide that there was enough evidence to call the four-part test from winter would be harder for you to satisfy? No, Your Honor. I think the winter test is very comparable to the two-part reasonable cause just improper standard. The reasonable cause prong of the just improper standard is essentially parallel to the likelihood of success prong in the four-part test and the just improper standard collapses... I thought this cause thing was pretty low and I thought the likelihood of success was fairly high. I thought you resisted the test because you thought reasonable cause was a lower standard than the likelihood of success. I thought it was just like you have to have a theory that might violate the NRA as opposed to that may not. It felt like 12B6 versus Rule 56. You just have to pass a 12B6 standard plausibility under our standard currently. But under the four-part test, it's more... likelihood of success means more than 50%, maybe even higher. No, Your Honor. Our position would be that the... I agree with you that the reasonable cause bar is pretty low. However, the reasonable cause as related to the likelihood of success is pretty similar. The main difference between the tests doesn't concern that first prong. It concerns the difference between the just improper standard and the other three factors used in the four-part equitable test in other circuits that employ the four-part test. The two-prong reasonable cause just improper standard that this circuit abides by is a better test for this type of proceeding. It's different than winter. The board files petitions for temporary relief because it acts in the public interest. It doesn't adjudicate the rights of private parties. Because of that, the legislative scheme is different. The statutory scheme under which a case reaches the district court... We take out interest of the public from the four-part test. You're saying it's basically the same. The tests are more or less the same at that point. It's very similar except for the fact that the just improper standard better accommodates the exclusive jurisdiction of the board to decide the merits of the case. That's the will of Congress. That the boards decide the merits of the case and nothing in the Supreme Court's decision in winter suggests whatsoever that the court intended to infringe upon the province of the board through that case. That case was about the use of sonar devices. That case is applied in lots and lots of contexts, but I understand your point. Thank you very much. I appreciate your time. Thank you, Your Honors. Your Honor, I wasn't clear whether I'd use my rebuttal time or not. No, you have your time. Thank you so much. I'd like to say two things if I may, Your Honor. One is lawyers will differ over how you read things, and we read winters and the winter standard differently than does the labor board. And the questions you started with when I began my argument, had we litigated under the winter standard, we would have litigated the merits. The right-line defenses, irreparable harm, balance of equities, et cetera. The problem for you is that we basically have not adopted the four-part test and I don't think... And we're not asking you to invoke an en banc panel. We understand that you've adopted... You have to lose first. Yes. Then you can ask us if you want. The second point is I think counsel may have been mistaken regarding her citation of Ahearn v. Jackson Hospital. Jackson Hospital involved 8A1, 3, and 5 charges in the petition. The 8A5 charge relates to failure to bargain in good faith. Moreover, the case references the fact, and I probably garbled my explanation of it, that the union was certified, the union met with the hospital several times to negotiate a first contract but was unsuccessful. That's the factual context in which the error was issued regarding bargaining. That factual context does not exist here. Well, but in fact what you just said that, well, they'd failed to reach a contract, I thought earlier we sort of, we were at least, I think Judge Radler had raised that the outcome's not guaranteed, so the fact that we, we can go back and read Ahearn, at least contemplated that an effect on off-site Ahearn, the way I read it, the reason you cited it was because the union had already been certified before the violation, but if it was legitimate to look at an effect on negotiation there, how is that any different than here? Because the process had started, there'd been a failure of bargaining, and there was actually a charge to predicate the relief on alleging a failure to bargain. It's a material difference. In their view, there was more there was actual evidence, not just projected evidence of a interference, we'll call it, with negotiation. That is correct. It's Judge Radler's point the analogy of temporal proximity makes a lot of sense. Thank you, Your Honors. Thank you. Appreciate all your arguments. The case will be submitted.